Douglas B. Tumminello, #7-5653
LEWIS ROCA ROTHGERBER CHRISTIE LLP
1200 17th Street, Suite 3000
Denver, CO 80202
Phone:  (303) 623-9000
E-mail:  dtumminello@lrrc.com

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2019 FEB 20  AM 10: 57

STEPHAN HARRIS, CLERK
CHEYENNE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

Civil Action No. 2:19-cv-__38-J_____

SMCG, LLC, A Wyoming Limited Liability Co.,

Plaintiff,

v.

ZENITH EDUCATION GROUP, INC., a
Delaware nonprofit corporation, and,
ECMG GROUP, INC., a Delaware nonprofit corporation.

Defendant.

---

### NOTICE OF REMOVAL

---

Defendants Zenith Education Group, Inc. and ECMC Group, Inc. ("Defendants"), by and

through their undersigned counsel, Lewis Roca Rothgerber Christie LLP, pursuant to 28 U.S.C.

§§ 1332, 1441 and 1446, hereby give notice of the removal of this action from the District Court

for the Second Judicial District, County of Albany, State of Wyoming, to the United States

District Court for the District of Wyoming. In support of said removal, Defendants state as

follows:

107301132_1

## INTRODUCTION

1.     On or about January 14, 2019, Plaintiff initiated this action by filing its Complaint in the Albany County District Court, State of Wyoming, Case No. 34764 ("State Action"). *See* Pltf's Compl., attached as **Exhibit A**.

2.     Plaintiff's Complaint asserts two claims for relief against Defendants, including a First Claim for Relief for Breach of Contract and a Second Claim for Relief Breach of the Covenant of Good Faith and Fair Dealing.

3.     This action arises out of two Lease Agreements for properties located in Laramie, Wyoming.

## COMPLIANCE WITH THE RULES

4.     All procedural requirements related to the removal of this action have been satisfied.

5.     On or about January 25, 2019, Plaintiff informally provided a copy of Plaintiff's Complaint to counsel for Zenith Education Group, Inc. ("Zenith").

6.     On February 4, 2019, Plaintiff served Zenith with a Summons and copy of Plaintiff's Complaint through Zenith's registered agent, CT Corporation. *See* Return of Service, attached as **Exhibit B**.

7.     ECMC Group, Inc. ("Group") has not been served with a Summons and a copy of Plaintiff's Complaint as of the date of this filing. Counsel for Group has informed counsel for the Plaintiff that they are willing to accept service of the Summons and Complaint, but have not yet a formal waiver and acceptance of service from the Plaintiff.

8.     This Notice of Removal is filed within thirty (30) days of receipt by Defendants of the Complaint and is, therefore, timely pursuant to 24 U.S.C. §§ 1441 and 1446(b).

9.     Concurrent with this Notice of Removal, Defendants have filed a Notice of Filing of State Court Records pursuant to 28 U.S.C. § 1446(a) and Local Rule 81.1. This includes a true and correct copy of the state court docket, which includes all state court pleadings, motions and other papers known to have been served on Defendants.

10.     Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of Plaintiff's Summons and Complaint (**Exhibit A**) is attached to this Notice of Removal.

11.     Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for Plaintiff.

12.     Pursuant to 28 U.S.C. § 1446(d) and Local Rule 81.1, Defendants are filing a Notice of Filing of Notice of Removal, including a copy of this Notice of Removal, in the pending State Action, Case No. 34764, Albany County District Court, State of Wyoming. A copy of the Notice of Filing of Notice of Removal is attached hereto as **Exhibit C** (without attached exhibits).

13.     Pursuant to Local Rule 81.1, Defendants state that no hearings or motions are pending, nor has any trial been set in the State Action.

14.     Pursuant to Fed.R.Civ.P. 81(c), Defendants will present their defenses by pleading at the time prescribed therein, and specifically reserve their right to assert all defenses, including those defenses under Fed.R.Civ.P. 12(b).

15.     Venue is proper in the District of Wyoming because this District embraces the location where the State Action is pending. *See* 28 U.S.C. § 1446(c).

16.     Both Defendants join in this Notice of Removal.

## DIVERSITY JURISDICTION

17.     Plaintiff's Complaint asserts claims over which this Court has jurisdiction pursuant to 28 U.S.C. § 1332 because: (a) the parties are citizens of different states, and (b) the amount in controversy exceeds $75,000.

## A.     THE PARTIES ARE CITIZENS OF DIFFERENT STATES

18.     Plaintiff SMCG, LLC is a Wyoming limited liability company authorized to conduct business in the state of Wyoming, with its principal place of business in Albany County, Wyoming. Upon information and belief, each of the members of SMCG, LLC are domiciled in Wyoming and are citizens of the state of Wyoming. Plaintiff is a citizen of Wyoming. *See Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1237 (10th Cir. 2015).

19.     Defendant Zenith is a Delaware nonprofit corporation with its principal place of business in Minneapolis, Minnesota. Defendant Zenith is a citizen of the states of Delaware and Minnesota. *See* 28 U.S.C. § 1332(c)(1).

20.     Defendant Group  is a Delaware nonprofit corporation with its principal place of business in Minneapolis, Minnesota. Defendant Group is a citizen of the states of Delaware and Minnesota. *Id.*

21.     For purposes of federal diversity jurisdiction, the parties are completely diverse.

## B.     THE AMOUNT IN CONTROVERSY EXCEEDS $75,000

22.     While not waiving Defendants' right to contest the issue, Plaintiff seeks a monetary judgment in excess of $75,000, exclusive of interest and costs.

23.     Removal of the action is proper on the basis of an amount in controversy if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds $75,000. 28 U.S.C.A. § 1446.

24.     "The amount in controversy is ordinarily determined by the allegations of the complaint, or, where they are not dispositive, by the allegations in the notice of removal." *Archer v. Kelly*, 271 F. Supp. 2d 1320, 1322 (N.D. Okla. 2003).

25.     In determining the amount in controversy, a court may look to the object sought to be accomplished by the plaintiff's complaint. *Ronzio v. Denver & R.G.W.R. Co.,* 116 F.2d 604, 606 (10th Cir. 1940). "The test for determining the amount in controversy is the pecuniary result to either party which the judgment would produce." *Id.*

26.     When a defendant seeks federal court adjudication, the defendant's stated amount in controversy allegation should be accepted when not contested by the plaintiff or questioned by the court. *Dart Cherokee Basin Operating Company, LLC v. Owens,* 135 S.Ct. 547, 553 (2014). A defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. *Id.* at 554.

27.     Information relating to the amount in controversy in the record of the state proceeding, or in response to discovery, shall be treated as an "other paper." 28 U.S.C. § 1446(c)(3)(A).

28.     A plaintiff's pre-litigation demand or settlement offer is evidence of the amount in controversy. *Archer v. Kelly*, 271 F. Supp. 2d 1320, 1322 (N.D. Okla. 2003); *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008).

29.     In the Complaint, Plaintiff alleges that the "amount in controversy **exceeds** the sum or value of $50,000.00, exclusive of interest and costs." (emphasis added). **Exhibit A** at ¶ 4.

30.     Moreover, Plaintiff has previously demanded as much as $555,465.15 to resolve its claims. *See* Demand, **Exhibit D**. Plaintiff's demand included an itemized calculation of damages and a recitation of underlying facts in support of its demand. *Id*.

31.     Based on the foregoing, the jurisdictional amount in controversy exceeds $75,000.00, exclusive of interest and costs, and therefore, this action may properly be removed to this Court pursuant to 28 U.S.C. §§ 1441 and 1446.

32.     Accordingly, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332.

WHEREFORE, Defendants Zenith Education Group, Inc. and ECMC Group, Inc. request that the action now pending in the Albany County District Court, Case No. 34764, be removed therefrom to this Court and that all further proceedings be heard in this Court.

Respectfully submitted this 19th day of February, 2019.

LEWIS ROCA ROTHGERBER CHRISTIE LLP

Douglas B. Tumminello, #7-5653
1200 17th Street, Suite 3000
Denver, CO 80202
Phone:  (303) 623-9000
E-mail:  dtumminello@lrrc.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of February 2019, a true and correct copy of the foregoing **NOTICE OF REMOVAL** was filed and was served upon the following:

Henry F. Bailey Jr., Esq.
Douglas W. Bailey, Esq.
Bailey Stock Harmon Cottam Lopez LLP
221 East 21st Street
P.O. Box 1557
Cheyenne, WY 82003
307-638-7745
*Attorneys for Plaintiff*

Douglas B. Tumminello, #7-5653
1200 17th Street, Suite 3000
Denver, CO 80202
Phone:  (303) 623-9000
E-mail:  dtumminello@lrrc.com

**EXHIBIT A**

Henry F. Bailey
Douglas W. Bailey
BAILEY | STOCK | HARMON | COTTAM | LOPEZ LLP
221 East 21st Street
P.O. Box 1557
Cheyenne, WY 82003
307-638-7745

## IN THE DISTRICT COURT FOR THE SECOND JUDICIAL DISTRICT
## STATE OF WYOMING, COUNTY OF ALBANY

| | | |
|---|---|---|
| SMCG, LLC, A Wyoming Limited Liability Co., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 34764 |
| | ) | |
| ZENITH EDUCATION GROUP, INC., a | ) | |
| Delaware nonprofit corporation, and ECMG | ) | |
| GROUP, INC., a Delaware nonprofit corporation. | ) | |
| | ) | |
| Defendants. | ) | |

### SUMMONS ·

To the above-named Defendant:

Zenith Education Group, Inc.
c/o CT Corporation System
1908 Thomes Ave.
Cheyenne, WY 82001

YOU ARE HEREBY SUMMONED and required to file with the Clerk and serve upon the Plaintiff's attorney an answer to the *Complaint* and *Jury Demand* which is herewith served upon you, within 20 days after service of this Summons upon you, exclusive of the date of service.   (If service upon you is made outside of the State of Wyoming, you are required to file and serve your answer within 30 days after service of this Summons upon you, exclusive of the date of service.) If you fail to do so, judgment by default will be taken against you for the relief demanded in the *Complaint*.

Dated this 28th day of January, 2019.

(Seal of District Court)

*Janice Sexton*

By: _____

Deputy Clerk

Attorney for Plaintiff
Henry F. Bailey
P. O. Box 1557
221 East 21st Street
Cheyenne, Wyoming 82003
307-638-7745

Henry F. Bailey, Jr.
Douglas W. Bailey
BAILEY STOCK HARMON COTTAM LOPEZ LLP
221 East 21st Street
P.O. Box 1557
Cheyenne, WY 82003
307-638-7745

## IN THE DISTRICT COURT FOR THE SECOND JUDICIAL DISTRICT

## STATE OF WYOMING, COUNTY OF ALBANY

Docket _____ No. _34764_

| | |
|---|---|
| SMCG, LLC, A Wyoming Limited Liability Co., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| ZENITH EDUCATION GROUP, INC., a | ) |
| Delaware nonprofit corporation, and | ) |
| ECMG GROUP, INC., a Delaware nonprofit | ) |
| corporation. | ) |
| | ) |
| Defendants. | ) |

FILED
IN DISTRICT COURT

JAN 14 2019

LARAMIE WYOMING
CLERK OF DISTRICT COURT

---

## COMPLAINT

---

Plaintiff, for its claims for relief against Defendants, alleges as follows:

## JURISDICTIONAL ALLEGATIONS

1.     Plaintiff SMCG, LLC, is a Wyoming limited liability company, authorized to

conduct business in the state of Wyoming, with its principal office and place of business in Albany

County, Wyoming.  SMCG is a successor in interest to Curt N. Blake and Chad D. Blake and

DWN, LLC and Robert D. Blake and Ruth I Blake for the properties forming the subject matter of

this case.

1

2.     Defendant Zenith Education Group, Inc. is a Delaware corporation, who at all times relevant to Plaintiff's claims, was authorized to conduct business in the state of Wyoming and who operated the Wyoming Technical Institute in Laramie, Wyoming. Zenith is a successor-in-interest to MJB Acquisition Corp.

3.     Defendant ECMC Group, Inc. is a Delaware nonprofit corporation, that guaranteed the lease obligations of Defendant Zenith, and thus was doing business in the state of Wyoming at all times relevant to Plaintiff's claims. (A copy of the Guaranty is attached hereto and incorporated by this reference as Exhibit 1.)

4.     The amount in controversy exceeds the sum or value of $50,000.00, exclusive of interest and costs.

5.     Venue is proper in the District Court for Albany County, Wyoming.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

6.     On November 26, 2014, Defendant Zenith entered into a Lease Assignment and Assumption with MJB Acquisition Corporation (Zenith's predecessor in interest), in which Zenith was assigned and assumed the lease agreements for the following properties in Laramie, Albany County, Wyoming:

(a)     715 & 721 Downey

(b)     709 Downey

(A Copy of the Lease Assignment and Assumption is attached hereto and incorporated as Exhibit 2)

7.     Paragraph 8 of the original May 5, 1998 Lease for 715 & 721 Downey concerns maintenance and restoration of the leased premises and provides:

2

8.     *Premises, Furnishings, Etc.* · During the term of this Lease. Agreement and any extensions or renewals hereof, Lessee will be responsible for the ordinary and customary maintenance of the leased premises, including but not limited to cleaning, repair or replacement of all furnishings, draperies, screens, light bulbs, and any and all glass breakage. *The parties hereto recognize the property being leased is new and that it shall be returned to Lessor at the expiration of the term of this Lease Agreement or any extension or renewals hereof in a similar condition,* less normal wear and tear.   (Emphasis added.)

(A copy of the May 5, 1998 Lease Agreement is attached hereto and incorporated

Exhibit 3.)

8.     The February 7, 2000 Lease for 709 Downey contains a similar paragraph – Paragraph 7, which provides:

7.     Premises, Furnishings, Etc.   During the term of this Lease Agreement and any extensions or renewals hereof, Lessee will be responsible for the ordinary and customary maintenance of the leased premises, including but not limited to cleaning, repair or replacement of all furnishings, draperies, screens, light bulbs and any and all glass breakage.  Floor coverings and all appliances will be replaced at the expiration of this Lease Agreement, or any extensions or renewals hereof, paid for from the account set up at First National Bank, with Lessor and Lessee sharing equally the costs of replacement.   The floor coverings will be one grade above the then FHA minimum standard flooring.  The appliances in each rental unit will include: 1 – 40 gallon electric hot water heater; 1 – stackable washer and dryer; 1 – 24" electric range; and 1 – 24" refrigerator.  Lessee agrees to pay for all repairs to appliances during this Lease Agreement and any extension or renewal hereof.   In the event an appliance is damaged beyond repair by a tenant, guest or invitee, Lessee shall be responsible for the full replacement cost of said appliance.   Lessee shall agree to and does hereby accept the condition of the leased premises and all furnishings, appliances and fixtures thereon in the same condition at the termination of this Lease Agreement, subject to the terms hereof.

(A copy of the February 7, 2000 lease is attached and incorporated as Exhibit 4.)

9.     Authorized individuals executed various extensions to the lease

agreements through the years.

10.     Following the closing of WyoTech in Laramie, Wyoming, and the

surrender of the leased premises by Defendants, inspections revealed of the 36 units on

the leased properties disclosed substantial work that needed to be done to clean, repair, and replace furnishings and appliances, etc., and to otherwise "return" the units to a condition similar to their condition when they were originally leased. Moreover, Defendant Zenith failed to provide notice of non-renewal as required by the leases and with respect to the 709 Downey Street property, washers, driers, and garbage disposals were removed and not replaced.

11.     Despite repeated demands on Defendants to compensate Plaintiff for the damages, repairs, etc., to the leased premises, or to perform or contract to perform the needed repairs, replacements, etc., Defendants have failed or refused to honor their contract obligations.

12.     Plaintiff has been unable to rent or lease the units in their current condition and has thus lost revenue from leasing or renting the property.

## FIRST CLAIM FOR RELIEF – BREACH OF CONTRACT

13.     Plaintiff realleges and incorporates by this reference the allegations in paragraphs 1-12, inclusive.

14.     Defendants have breached the above referenced Lease agreements, including the extensions thereof, by failing to restore, repair, and/or replace the leased premises and property as agreed.

15.     As a result of Defendants' breach, Plaintiffs are entitled to an award of compensatory damages for the reasonable costs of repairing, replacing, and/or restoring the subject property, and for consequential damages for lost revenue, all in an amount exceeding the jurisdictional threshold of the District Court and to be more specifically proven at trial, plus

4

attorney fees and costs as allowed by the lease agreements.

## SECOND CLAIM FOR RELIEF – BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

16.     Plaintiff realleges and incorporates by this reference all allegations in paragraphs 1-15, inclusive.

17.     The covenant of good faith and fair dealing is implied in every contract entered into in the state of Wyoming.

18.     Defendants' conduct, as hereinabove alleged, has not been consistent with the agreed common purpose and justified expectations of Plaintiff, and has injured Plaintiff's right to receive the benefit of the Lease agreements.

19.     As a direct result of Defendants' breach of the implied covenant of good faith and fair dealing, as set forth above, Plaintiff is entitled to an award of compensatory damages in an amount exceeding the jurisdictional threshold of the District Court and to be more specifically proven at trial.

WHEREFORE, Plaintiff prays for judgment in its favor and against Defendants, for attorney fees, costs, and such other and further relief as the court deems proper.

Dated this _9_ day of _January_, 2018.

BAILEY STOCK HARMON COTTAM LOPEZ LLP

Henry F. Bailey Jr.
221 East 21st Street
P.O. Box 1557
Cheyenne, WY   82003
307-638-7745
Attorney for Plaintiff

## GUARANTY OF LEASE

THIS GUARANTY OF LEASE ("Guaranty") is executed as of November 26, 2014 by ECMC Group, Inc., a Delaware nonprofit corporation ("Guarantor"), for the benefit of Landlord. Except as otherwise provided in this Guaranty, all defined terms used herein shall have the meaning set forth in the Lease Assignment and Assumption ("Assignment") to which this is attached.

WHEREAS, Assignor and Assignee have entered into the Assignment; and

WHEREAS, as an inducement to Landlord to execute a consent to the Assignment, the undersigned has agreed to guarantee to Landlord, from and after the Effective Date of the Assignment, the full and timely performance of the obligations of Assignee under the Lease.

NOW, THEREFORE, in consideration of the execution of the consent by Landlord, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.      Guarantor unconditionally guarantees, without recoupment or deduction by reason of setoff, defense or counterclaim, to Landlord and its successor and assigns the full and punctual payment, and the performance and observance by Tenant, of all the sums, terms, covenants and conditions in the Lease to be paid, kept, performed or observed by Tenant. All references herein to "Tenant" shall refer to Assignee in its role as the tenant under the Lease on and after the Effective Date of the Assignment. Additionally, the term "Tenant" wherever herein used refers to and means any assignee or sublessee of said Lease and also any successor to the interests of said Tenant, assignee or sublessee of such Lease or any part thereof, whether by assignment, sublease or otherwise.

2.      If Tenant shall at any time default in the performance or observance of any of the terms, covenants or conditions of the Lease to be kept, performed or observed by Tenant, Guarantor will keep, perform and observe same, as the case may be, in the place and stead of Tenant. Guarantor has the right to cure any default of Tenant, provided such cure is performed in accordance with the terms and within the time periods set forth in the Lease. Landlord shall give a copy of any notice of default concurrently to Guarantor, but it is otherwise specifically agreed and understood that Landlord may proceed forthwith and immediately against Tenant or against Guarantor following any breach or default by Tenant (beyond any applicable notice or cure period) or for the enforcement of any rights which Landlord may have as against Tenant pursuant to or under the terms of the Lease or at law or in equity. Notwithstanding anything in this Guaranty to the contrary, Guarantor shall have the benefit of all notice and cure periods, defenses, and other rights that Tenant has under the Lease.

3.      Any act of Landlord, or of its successors or assigns, consisting of a waiver of any of the terms or conditions of the Lease, or the giving of any consent on any manner or thing relating to the Lease, or the granting of any indulgences or extensions of time to Tenant, may be done without notice to Guarantor and without releasing Guarantor from any of its obligations hereunder.

4.      The obligations of Guarantor hereunder shall not be released by Landlord's receipt, application or release of any security given for the performance and observance of any covenant or condition of the Lease to be performed or observed by Tenant, nor by any modification of the Lease, regardless of whether Guarantor consents thereto or receives notice thereof.

5.      The liability of Guarantor hereunder shall in no way be affected by (a) the release or discharge of Tenant in any creditor's receivership, bankruptcy or other proceeding; (b) the impairment, limitation or modification of the liability of Tenant or the estate of Tenant in bankruptcy, or of any remedy for the enforcement of Tenant's liability under the Lease resulting from the operation of any present or future provision of any federal or state bankruptcy or insolvency law or other statute or from the decision of any court; (c) the rejection or disaffirmance of the Lease in any such proceedings; (d) the assignment or transfer of the Lease by Tenant; (e) any disability or other defense of Tenant; (f) the cessation from any cause whatsoever of the liability of Tenant; (g) the exercise by Landlord of any of its rights or remedies reserved under the Lease or by law; or (h) any termination of the Lease, except as explicitly provided in the Lease.

EXHIBIT
1

6.      Guarantor further agrees that it may be joined in any action against Tenant in connection with the said obligations of Tenant and recovery may be had against Guarantor in any such action. Landlord may enforce the obligations of Guarantor hereunder without first taking any action whatsoever against Tenant or its successors and assigns, or pursue any other remedy or apply any security it may hold, and Guarantor hereby waives (a) notice of acceptance of this Guaranty, (b) demand of payment, presentation and protest, (c) all right to assert or plead any statute of limitations as to or relating to this Guaranty and the Lease, (d) any right to require Landlord to proceed against Tenant or any other guarantor or any other person or entity liable to Landlord, (e) any right to require Landlord to apply to any default any security deposit or other security it may hold under the Lease, (f) any right to require Landlord to proceed under any other remedy Landlord may have before proceeding against Guarantor, (g) any right of subrogation, and (h) any and all surety or other defenses in the nature thereof.

7.      Until all the covenants and conditions in the Lease on Tenant's part to be performed and observed are fully performed and observed, Guarantor (a) shall have no right to enforce or receive any payment by way of subrogation against Tenant by reason of any payments or acts of performance by Guarantor hereunder, and (b) subordinates any liability or indebtedness of Tenant now or hereafter held by Guarantor to the obligations of Tenant to Landlord under the Lease.

8.      This Guaranty shall apply to the Lease, any extension, renewal, modification or amendment thereof and to any assignment, subletting or other tenancy thereunder or to any holdover term following the term granted under the Lease or any extension or renewal thereof. It is specifically agreed and understood that the terms of the Lease may be altered, affected, modified or changed by agreement between Landlord and Tenant, or by a course of conduct, and said Lease may be assigned by Landlord or any assignee of Landlord without consent or notice to Guarantor and that this Guaranty shall thereupon and thereafter guarantee the performance of said Lease as so changed, modified, altered or assigned.

9.      In the event this Guaranty shall be held ineffective or unenforceable by any court of competent jurisdiction or in the event of any limitation of Guarantor's liability hereunder other than as expressly provided herein, then Guarantor shall be deemed to be a tenant under the Lease with the same force and effect as if Guarantor were expressly named as a joint and several tenant therein with respect to the obligations of Tenant thereunder hereby guaranteed.

10.     In the event of any litigation between Guarantor and Landlord with respect to the subject matter hereof, the unsuccessful party to such litigation agrees to pay to the successful party all fees, costs and expenses thereof, including reasonable attorneys' fees and expenses.

11.     No delay on the part of Landlord in exercising any right hereunder or under the Lease shall operate as a waiver of such right or of any other right of Landlord under the Lease or hereunder, nor shall any delay, omission or waiver on any one occasion be deemed a bar to or a waiver of the same or any other right on any future occasion. This Guaranty shall not be released, modified or affected by failure or delay on the part of Landlord to enforce any of the rights or remedies of Tenant under the Lease, whether pursuant to the terms thereof or at law or in equity.

12.     This instrument constitutes the entire agreement between Landlord and Guarantor with respect to the subject matter hereof, superseding all prior oral or written agreements or understandings with respect thereto and may not be changed, modified, discharged or terminated orally or in any manner other than by an agreement in writing signed by Guarantor and Landlord.

13.     This Guaranty shall be governed by and construed in accordance with the laws of the State of Delaware. The parties further agree that venue shall be proper in the Superior Court or Federal District Court for the county in which the Premises are located, in the event of any litigation between the parties with respect to this Guaranty, and Guarantor hereby waives any claim of proper venue in any other jurisdiction and any objection to venue as described herein.

14.     All notices or other communications required or permitted hereunder shall be in writing, and shall be personally delivered, sent by overnight delivery service, or sent by registered or certified mail, postage prepaid, return receipt requested and shall be deemed received upon the earlier of (i) if personally delivered or sent by

overnight delivery service, the date of delivery to the address of the person to receive such notice; or (ii) if mailed, four (4) business days after the date of posting by the United States Post Office. Notices to Guarantor shall be to the address set forth below, or to such other address as Guarantor has provided by prior written notice to Landlord.

15.    If Landlord desires to sell, finance or refinance the Premises demised under the Lease, Guarantor hereby agrees, within ten (10) business days after receipt of a written request, to deliver to any lender or buyer designated by Landlord such estoppel statements and financial statements of Guarantor as may be reasonably required by such lender or buyer.  All such statements shall be received by any such lender or buyer in confidence and shall be used only for the foregoing purposes, and such lender or buyer shall acknowledge the same to Guarantor in writing (should Guarantor require such an acknowledgement) as a precondition to Guarantor's obligations under this Paragraph 15.  In addition, Guarantor shall not be obligated to deliver estoppel statements or financial statements hereunder more frequently than two (2) times in any calendar year.

16.    The term "Landlord" whenever hereinabove used refers to and means the Landlord in the Lease specifically named and also any assignee of said Landlord, whether by outright assignment or by assignment for security, and also any successor to the interest of said Landlord or of any assignee in such Lease or any part thereof, whether by assignment or otherwise.  So long as the Landlord's interest in or to the Premises or the rents, issues and profits therefrom, or in, to or under said Lease, are subject to any mortgage or deed of trust or assignment for security, no acquisition by Guarantor of Landlord's interest in the Premises or under said Lease shall affect the continuing obligation of Guarantor under this Guaranty which shall nevertheless continue in full force and effect for the benefit of the mortgagee, beneficiary, trustee or assignee under such mortgage, deed of trust or assignment, or any purchase at sale by judicial foreclosure or under private power of sale, and of the successors and assigns of any such mortgagee, beneficiary, trustee, assignee or purchaser.

17.    If Guarantor is a corporation, the authorized officer must sign on behalf of the corporation and indicate the capacity in which he or she is signing.

18.    Notwithstanding anything in this Guaranty to the contrary, in no event shall Guarantor be deemed to have guaranteed any Lease obligations beyond those explicitly assumed by Assignee under the Assignment.

IN WITNESS WHEREOF, Guarantor has executed this Guaranty of Lease as of the date first above written.

GUARANTOR:

ECMC Group, Inc., a Delaware nonprofit corporation

By: _____
Name: _Gregory R. Van Guilder_
Its: _Chief Financial Officer_

Date: _November 26, 2014_

Guarantor's Address for Notice:

ECMC Group, Inc.
1 Imation Place, Building 2
Oakdale, MN 55128
Attention: Dan Fisher, General Counsel

with copies to (which copies shall not constitute notice):
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, Pennsylvania 19103
Attention: H. John Michel, Jr.

## LEASE ASSIGNMENT AND ASSUMPTION

THIS LEASE ASSIGNMENT AND ASSUMPTION (this "Assignment") is made and entered into as of the 26th day of November, 2014 by and between MJB Acquisition Corporation ("Assignor") and Zenith Education Group, Inc., a Delaware nonprofit corporation ("Assignee").

## RECITALS

A.   Assignor is the "Tenant" and SMCG, LLC is the present "Landlord" under a lease (the "Lease"). Exhibit "A" attached hereto lists the documents comprising the Lease, which Assignee acknowledges having received, as well as the address and approximate square footage of the leased premises.

B.   Pursuant to that certain Asset Purchase Agreement dated November 19, 2014 (the "Agreement"), Corinthian Colleges, Inc., a Delaware corporation ("Parent"); Corinthian Schools, Inc., a Delaware corporation ("CSI"); Everest College Phoenix, Inc., an Arizona corporation ("ECP"); Rhodes Colleges, Inc., a Delaware corporation ("Rhodes"); Titan Schools, Inc., a Delaware corporation ("Titan"); MJB Acquisition Corporation, a Wyoming corporation ("MJB"); Florida Metropolitan University, Inc., a Florida corporation ("FMU"); Sequoia Education, Inc., a California corporation ("Sequoia"); Eton Education, Inc., a Washington corporation ("Eton"); Ashmead Education, Inc., a Washington corporation ("Ashmead"); Grand Rapids Educational Center, Inc., a Michigan corporation ("GREC"); Rhodes Business Group, Inc., a Delaware corporation ("RBG"); Pegasus Education, Inc., a Delaware corporation ("Pegasus"); and Socle Education, Inc., a Delaware corporation ("Socle" and, together with Parent, CSI, ECP, Rhodes, Titan, MJB, FMU, Sequoia, Eton, Ashmead, GREC, RBG and Pegasus, the "Sellers"); Assignee, as "Purchaser," and ECMC Group, Inc., a Delaware nonprofit corporation ("ECMC"), in its capacity as the guarantor of the obligations of Purchaser under the Agreement; Assignor has agreed to assign to Assignee, as of the "Closing Date" (defined in the Agreement), all of its right, title and interest in and to the Lease, and Assignee is willing to receive from Assignor such assignment and to assume each and all of the obligations of the Tenant under the Lease to be performed on and after the Effective Date.

NOW, THEREFORE, in consideration of the foregoing and other good and valuable consideration, the receipt of which is hereby acknowledged, the parties hereto agree as follows:

1.   **Assignment**.   Effective as of the Closing Date under the Agreement (the "Effective Date"), Assignor hereby assigns and transfers to Assignee all of its right, title and interest in and to the Lease for the duration of the Lease term.

2.   **Assumption**.   Assignee hereby assumes, effective as of the Effective Date, all obligations of Assignor as the tenant under the Lease to be performed under the Lease from and after the Effective Date and agrees to be bound by and perform all of the covenants, duties and obligations to be performed by the tenant from and after the Effective Date. Notwithstanding the foregoing, Assignee shall have no obligation, liability or responsibility for any liability, cost, expense or obligation of Assignor under the Lease that is attributable to periods prior to the Effective Date.

EXHIBIT
2

3.     Consent.  Assignor and Assignee desire to obtain Landlord's consent to this proposed transaction.

4.     Indemnity by Assignor.  Assignor hereby agrees to indemnify and hold harmless Assignee from any and all liability, loss, cost, damage or expense (including, without limitation, reasonable attorneys' fees) which Assignee incurs under the Lease, and from any and all claims and demands whatsoever which are asserted against Assignee by reason of any alleged obligation or undertaking on its part to perform or discharge any of the terms, covenants or agreements contained therein, which liability, loss, cost, damage, expense, claim or demand arises from acts, events or omissions occurring before the Effective Date.  If Assignee incurs any such liability, loss, cost, damage or expense under the Lease or in defense against any such claims or demands, the amount thereof (including costs, expenses and reasonable attorneys' fees) together with interest thereon at the rate of ten percent (10%) per annum from the date any payment is made, shall be reimbursed to Assignee by Assignor immediately upon demand.

5.     Indemnity by Assignee.  Assignee hereby agrees to indemnify and hold harmless Assignor from any and all liability, loss, cost, damage or expense (including, without limitation, reasonable attorneys' fees) which Assignor incurs under the Lease, and from any and all claims and demands whatsoever which are asserted against Assignor by reason of any alleged obligation or undertaking on its part to perform or discharge any of the terms, covenants or agreements contained therein, which liability, loss, cost, damage, expense, claim or demand arises from acts, events or omissions occurring on or after the Effective Date.  If Assignor incurs any such liability, loss, cost, damage or expense under the Lease or in defense against any such claims or demands, the amount thereof (including costs, expenses and reasonable attorneys' fees) together with interest thereon at the rate of ten percent (10%) per annum from the date any payment is made, shall be reimbursed to Assignor by Assignee immediately upon demand.

6.     Successors and Assigns.  This Assignment shall inure to the benefit of, and be binding upon, the successors, executors, administrators, legal representatives and assigns of the parties hereto.

7.     Governing Law.  This Assignment shall be construed under and enforced in accordance with the laws of the State of Delaware.

8.     Further Assurances.  Assignor and Assignee each agree to execute and deliver to the other party, upon demand, such further documents, instruments and conveyances, and shall take such further actions as are necessary or desirable to effectuate this Assignment.

9.    **Attorneys' Fees; Costs.**  Upon the bringing of any action, suit or arbitration by either party against the other arising out of this Assignment or the subject matter hereof, the party in whose favor final judgment shall be entered shall be entitled to recover from the other party all costs and expenses of suit including, without limitation, reasonable attorneys' fees and costs.

IN WITNESS WHEREOF the parties have executed this Assignment as of the date first above written.

**ASSIGNOR:**

MJB Acquisition Corporation

By: _____
Name: _____
       Paul T. Dimeo
Its: _____
       V.P. Real Estate & Facilities

**ASSIGNEE:**

Zenith Education Group, Inc., a Delaware nonprofit corporation

By: _____
Name: _____
       Gregory A. Van Guilder
Its: Treasurer

## EXHIBIT "A"

## LEASE AND AMENDMENTS

The Lease relates to the lease of premises which consist of approximately N/A square feet located at 715 and 721 Downey Street, Laramie, WY 82072.

Lease dated May 5, 1998

Lease Extension dated March 1, 2001

Lease Extension dated June 8, 2011

Lease Extension dated February 8, 2013

# GUARANTY OF LEASE

THIS GUARANTY OF LEASE ("Guaranty") is executed as of November 26, 2014 by ECMC Group, Inc., a Delaware nonprofit corporation ("Guarantor"), for the benefit of Landlord. Except as otherwise provided in this Guaranty, all defined terms used herein shall have the meaning set forth in the Lease Assignment and Assumption ("Assignment") to which this is attached.

WHEREAS, Assignor and Assignee have entered into the Assignment; and

WHEREAS, as an inducement to Landlord to execute a consent to the Assignment, the undersigned has agreed to guarantee to Landlord, from and after the Effective Date of the Assignment, the full and timely performance of the obligations of Assignee under the Lease.

NOW, THEREFORE, in consideration of the execution of the consent by Landlord, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.      Guarantor unconditionally guarantees, without recoupment or deduction by reason of setoff, defense or counterclaim, to Landlord and its successor and assigns the full and punctual payment, and the performance and observance by Tenant, of all the sums, terms, covenants and conditions in the Lease to be paid, kept, performed or observed by Tenant. All references herein to "Tenant" shall refer to Assignee in its role as the tenant under the Lease on and after the Effective Date of the Assignment. Additionally, the term "Tenant" wherever herein used refers to said means any assignee or sublessee of said Lease and also any successor to the interests of said Tenant, assignee or sublessee of such Lease or any part thereof, whether by assignment, sublease or otherwise.

2.      If Tenant shall at any time default in the performance or observance of any of the terms, covenants or conditions of the Lease to be kept, performed or observed by Tenant, Guarantor will keep, perform and observe same, as the case may be, in the place and stead of Tenant. Guarantor has the right to cure any default of Tenant, provided such cure is performed in accordance with the terms and within the time periods set forth in the Lease. Landlord shall give a copy of any notice of default concurrently to Guarantor, but it is otherwise specifically agreed and understood that Landlord may proceed forthwith and immediately against Tenant or against Guarantor following any breach or default by Tenant (beyond any applicable notice or cure period) or for the enforcement of any rights which Landlord may have as against Tenant pursuant to or under the terms of the Lease or at law or in equity. Notwithstanding anything in this Guaranty to the contrary, Guarantor shall have the benefit of all notice and cure periods, defenses, and other rights that Tenant has under the Lease.

3.      Any act of Landlord, or of its successors or assigns, consisting of a waiver of any of the terms or conditions of the Lease, or the giving of any consent on any manner or thing relating to the Lease, or the granting of any indulgences or extensions of time to Tenant, may be done without notice to Guarantor and without releasing Guarantor from any of its obligations hereunder.

4.      The obligations of Guarantor hereunder shall not be released by Landlord's receipt, application or release of any security given for the performance and observance of any covenant or condition of the Lease to be performed or observed by Tenant, nor by any modification of the Lease, regardless of whether Guarantor consents thereto or receives notice thereof.

5.      The liability of Guarantor hereunder shall in no way be affected by (a) the release or discharge of Tenant in any creditor's receivership, bankruptcy or other proceeding; (b) the impairment, limitation or modification of the liability of Tenant or the estate of Tenant in bankruptcy, or of any remedy for the enforcement of Tenant's liability under the Lease resulting from the operation of any present or future provision of any federal or state bankruptcy or insolvency law or other statute or from the decision of any court; (c) the rejection or disaffirmance of the Lease in any such proceedings; (d) the assignment or transfer of the Lease by Tenant; (e) any disability or other defense of Tenant; (f) the cessation from any cause whatsoever of the liability of Tenant; (g) the exercise by Landlord of any of its rights or remedies reserved under the Lease or by law; or (h) any termination of the Lease, except as explicitly provided in the Lease.

6.      Guarantor further agrees that it may be joined in any action against Tenant in connection with the said obligations of Tenant and recovery may be had against Guarantor in any such action. Landlord may enforce the obligations of Guarantor hereunder without first taking any action whatsoever against Tenant or its successors and assigns, or pursue any other remedy or apply any security it may hold, and Guarantor hereby waives (a) notice of acceptance of this Guaranty, (b) demand of payment, presentation and protest, (c) all right to assert or plead any statute of limitations as to or relating to this Guaranty and the Lease, (d) any right to require Landlord to proceed against Tenant or any other guarantor or any other person or entity liable to Landlord, (e) any right to require Landlord to apply to any default any security deposit or other security it may hold under the Lease, (f) any right to require Landlord to proceed under any other remedy Landlord may have before proceeding against Guarantor, (g) any right of subrogation, and (h) any and all surety or other defenses in the nature thereof.

7.      Until all the covenants and conditions in the Lease on Tenant's part to be performed and observed are fully performed and observed, Guarantor (a) shall have no right to enforce or receive any payment by way of subrogation against Tenant by reason of any payments or acts of performance by Guarantor hereunder; and (b) subordinates any liability or indebtedness of Tenant now or hereafter held by Guarantor to the obligations of Tenant to Landlord under the Lease.

8.      This Guaranty shall apply to the Lease, any extension, renewal, modification or amendment thereof and to any assignment, subletting or other tenancy thereunder or to any holdover term following the term granted under the Lease or any extension or renewal thereof. It is specifically agreed and understood that the terms of the Lease may be altered, affected, modified or changed by agreement between Landlord and Tenant, or by a course of conduct, and said Lease may be assigned by Landlord or any assignee of Landlord without consent or notice to Guarantor and that this Guaranty shall thereupon and thereafter guarantee the performance of said Lease as so changed, modified, altered or assigned.

9.      In the event this Guaranty shall be held ineffective or unenforceable by any court of competent jurisdiction or in the event of any limitation of Guarantor's liability hereunder other than as expressly provided herein, then Guarantor shall be deemed to be a tenant under the Lease with the same force and effect as if Guarantor were expressly named as a joint and several tenant therein with respect to the obligations of Tenant thereunder hereby guaranteed.

10.     In the event of any litigation between Guarantor and Landlord with respect to the subject matter hereof, the unsuccessful party to such litigation agrees to pay to the successful party all fees, costs and expenses thereof, including reasonable attorneys' fees and expenses.

11. No delay on the part of Landlord in exercising any right hereunder or under the Lease shall operate as a waiver of such right or of any other right of Landlord under the Lease or hereunder, nor shall any delay, omission or waiver on any one occasion be deemed a bar to or a waiver of the same or any other right on any future occasion. This Guaranty shall not be released, modified or affected by failure or delay on the part of Landlord to enforce any of the rights or remedies of Tenant under the Lease, whether pursuant to the terms thereof or at law or in equity.

12.     This instrument constitutes the entire agreement between Landlord and Guarantor with respect to the subject matter hereof, superseding all prior oral or written agreements or understandings with respect thereto and may not be changed, modified, discharged or terminated orally or in any manner other than by an agreement in writing signed by Guarantor and Landlord.

13.     This Guaranty shall be governed by and construed in accordance with the laws of the State of Delaware. The parties further agree that venue shall be proper in the Superior Court or Federal District Court for the county in which the Premises are located, in the event of any litigation between the parties with respect to this Guaranty, and Guarantor hereby waives any claim of proper venue in any other jurisdiction and any objection to venue as described herein.

14.     All notices or other communications required or permitted hereunder shall be in writing, and shall be personally delivered, sent by overnight delivery service, or sent by registered or certified mail, postage prepaid, return receipt requested and shall be deemed received upon the earlier of (i) if personally delivered or sent by

overnight delivery service, the date of delivery to the address of the person to receive such notice; or (ii) if mailed, four (4) business days after the date of posting by the United States Post Office. Notices to Guarantor shall be to the address set forth below, or to such other address as Guarantor has provided by prior written notice to Landlord.

15.    If Landlord desires to sell, finance or refinance the Premises demised under the Lease, Guarantor hereby agrees, within ten (10) business days after receipt of a written request, to deliver to any lender or buyer designated by Landlord such estoppel statements and financial statements of Guarantor as may be reasonably required by such lender or buyer. All such statements shall be received by any such lender or buyer in confidence and shall be used only for the foregoing purposes, and such lender or buyer shall acknowledge the same to Guarantor in writing (should Guarantor require such an acknowledgment) as a precondition to Guarantor's obligations under this Paragraph 15. In addition, Guarantor shall not be obligated to deliver estoppel statements or financial statements hereunder more frequently than two (2) times in any calendar year.

16.    The term "Landlord" whenever hereinabove used refers to and means the Landlord in the Lease specifically named and also any assignee of said Landlord, whether by outright assignment or by assignment for security, and also any successor to the interest of said Landlord or of any assignee in such Lease or any part thereof, whether by assignment or otherwise. So long as the Landlord's interest in or to the Premises or the rents, issues and profits therefrom, or in, to or under said Lease, are subject to any mortgage or deed of trust or assignment for security, no acquisition by Guarantor of Landlord's interest in the Premises or under said Lease shall affect the continuing obligation of Guarantor under this Guaranty which shall nevertheless continue in full force and effect for the benefit of the mortgagee, beneficiary, trustee or assignee under such mortgage, deed of trust or assignment, of any purchase at sale by judicial foreclosure or under private power of sale, and of the successors and assigns of any such mortgagee, beneficiary, trustee, assignee or purchaser.

17.    If Guarantor is a corporation, the authorized officer must sign on behalf of the corporation and indicate the capacity in which he or she is signing.

18.    Notwithstanding anything in this Guaranty to the contrary, in no event shall Guarantor be deemed to have guaranteed any Lease obligations beyond those explicitly assumed by Assignee under the Assignment.

IN WITNESS WHEREOF, Guarantor has executed this Guaranty of Lease as of the date first above written.

GUARANTOR:

ECMC Group, Inc., a Delaware nonprofit corporation

By: _____
Name: _Gregory A. Van Guilder_
Its: _Chief Financial Officer_

Date: _November 26, 2014_

Guarantor's Address for Notice:

ECMC Group, Inc.
1 Imation Place, Building 2
Oakdale, MN 55128
Attention: Dan Fisher, General Counsel

with copies to (which copies shall not constitute notice):
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, Pennsylvania 19103
Attention: H. John Michel, Jr.

## LEASE AGREEMENT

THIS AGREEMENT made and entered into effective this 5th day of May, 1998, by and between Curt N. Blake and Chad D. Blake, their heirs, successors and assigns, hereinafter referred to as "LESSOR", and MJB ACQUISITION CORP., a corporation authorized to do business in Wyoming, d/b/a WYOMING TECHNICAL INSTITUTE, hereinafter referred to as "LESSEE";

*WITNESSETH:*

1.   **Premises Leased**.   Lessor does hereby lease and permit Lessee to enter upon, use and occupy for the purposes and on the conditions hereinafter set forth, the following described property situated in the City of Laramie, County of Albany, State of Wyoming, described as follows:

> Lots 3 and 4, Block 1, First Filing of Revised Montevue
> Addition to the City of Laramie.

It is understood Lessor is going to acquire said real property and construct two twelve (12) unit apartment complexes thereon which will be similar in style and construction to that presently leased by Lessee located at 709 Downey Street, Laramie, Wyoming.

2.   **Condition Precedent**.   This Lease Agreement is conditioned upon Lessor's acquisition of the real property and acceptable financing to acquire the real property and construct the buildings thereon by May 20, 1998. If Lessor cannot acquire said real property or financing by said date they will so notify Lessee by May 21, 1998, at which time this Lease Agreement shall be null and void.

EXHIBIT

3

3.    **Term**.  Unless sooner terminated as hereinafter provided, this Lease Agreement shall remain in full force and effect for a period beginning the 1st day of October, 1998, and ending the 30th day of June, 2005, together with options to renew as set forth herein.

4.    **Rental**.  Lessee agrees to pay to Lessor, as rent for the use of the above described premises, the sum of Eleven Thousand Two Hundred Fifty and No/100 Dollars ($11,250.00) per month.  A payment of Eleven Thousand Two Hundred Fifty and No/100 Dollars ($11,250.00) shall be paid on the first day of October, 1998, and a like payment shall be made on the first day of each consecutive month thereafter for the term of this Lease Agreement.

In the event Lessee fails to make any payment as set forth herein, within ten (10) days of its due date, then Lessee shall be in default of this Lease Agreement, in which case Lessor may either elect to specifically enforce this Lease Agreement, or Lessor may evict Lessee and re-enter with or without process of law and in any manner resume possession of said premises subject to the provisions of Paragraph 18 hereof.  Lessor shall have a lien right on any and all of Lessee's property located on the premises.

If any payment of rent is not made as provided herein within ten (10) days after the date due, Lessee shall  pay a late fee in the amount of five percent (5%) of such late payment of rent.  In the event any payment of rent continues to remain unpaid for thirty (30) days after said payment is due, Lessee shall pay interest on the unpaid rent at a rate of eighteen percent (18%) per annum from the first day such payment is due until such rent is paid.  All payments made by Lessee shall be applied first to interest and penalties then to rent and then to annual payments due in advance.

5.    **Utilities**.  Lessee, during occupancy of the leased premises, shall pay one hundred percent (100%) of all charges accruing for gas, electricity, telephone,

cable television and city services (including water, sewer, dump, snow removal, refuse and mosquito fees).

6.   Parking Lot.   Lessor shall be responsible for the upkeep, maintenance, repair, sealing, crack-fill and painting of parking space stripes of the leased premises' parking area.  Excepting the specific responsibilities agreed to herein by Lessor, Lessee shall maintain in a clean condition and be responsible for and shall promptly repair any damage to the leased premises' parking area.

7.   Walks.   Lessee shall keep the areas of the yard in a clean and well maintained condition.  Lessee shall also be responsible for the snow removal from the walks and parking lot areas of the leased premises in accordance with applicable city ordinances.

8.   Premises, Furnishings, Etc.   During the term of this Lease Agreement and any extensions or renewals hereof, Lessee will be responsible for the ordinary and customary maintenance of the leased premises, including but not limited to cleaning, repair or replacement of all furnishings, draperies, screens, light bulbs and any and all glass breakage.  The parties hereto recognize the property being leased is new and that it shall be returned to Lessor at the expiration of the term of this Lease Agreement or any extension or renewals hereof in a similar condition, less normal wear and tear.

9.   Assignment.   This Lease Agreement hereby given may not be assigned or transferred either in whole or in part, by Lessee without the written consent of Lessor, which consent shall not be unreasonably withheld or delayed.  Consent will be given if assignee or transferee is as financially responsible as Lessee, or is otherwise financially responsible.  Lessee agrees that in all written sub-leases with tenants of the premises, said tenants shall be denied the ability to store, maintain or use any barbecue or hibachi of any type on any portion of the leased premises at any time.

10.     Structural Maintenance.  During the course of this Lease Agreement and any extension or renewals hereof, Lessor shall be responsible for structural maintenance to the leased premises, including the roof, building exterior, sidewalks, parking lot, major plumbing not caused by the negligence of the tenants, guests or invitees.

11.     Use.  Lessee shall not suffer or permit the said premises to be used for any unlawful purpose or in an improper manner contrary to law or ordinance, nor permit any liens to be filed against said premises.  Lessee will hold Lessor harmless from any liability whatsoever, including cost and reasonable attorney's fees arising out of Lessee's leasing and subleasing of said premises.

12.     Disturbing Noises.  Lessee and Lessee's tenants shall not make or permit to be made any disturbing noises, or do or permit any act which will unreasonably interfere with the rights, comforts or conveniences of neighboring property owners.

13.     Option to Renew.  Lessor hereby grants to Lessee the option to renew this Lease Agreement for two (2) consecutive five (5) year terms after the expiration of the original term of this Lease Agreement; PROVIDED, HOWEVER, that the terms of any such renewals of this Lease Agreement including but not limited to any adjustment in the rental to paid hereunder, shall meet with the mutual approval of both of the parties to this Lease Agreement.  Lessor and Lessee agree that upon renewal of the Lease Agreement, monthly rent for the term of the renewal shall not be less than Eleven Thousand Two Hundred Fifty Dollars and NO/100 ($11,250.00) per month, and shall not exceed one percent (1%) per annum from the date of the term of the lease to the date of renewal (i.e. seven percent [7%] increase from 1998 to 2005).  In the event Lessee elects to exercise the options described herein, written notice thereof must be provided to Lessor no later than March 31, 2005 and March 31, 2010, respectively.

14.   Insurance and Property Tax.   Lessor shall, at their expense, maintain liability insurance and comprehensive hazard insurance on the leased premises and pay real property taxes and assessments on said premises.   Lessor shall bear no responsibility whatsoever for loss or damage to personal property located within or about the leased premises, or for personal injury or death of any tenant or guest or invitee thereof, and Lessee agrees to indemnify and hold Lessor harmless from any and all liability under such circumstances, including but not limited to costs and reasonable attorney's fees.

15.   Remodeling.   Lessee shall have the right to remodel the leased premises, at its own expense; PROVIDED, HOWEVER, written permission is first had and obtained from Lessor, which consent shall not be unreasonably withheld or delayed.   There shall be no structural changes made to the premises by Lessee.

16.   Keys.   Lessee from time to time, in its discretion and at its cost shall be permitted to change the locks on the individual units in the leased premises, provided, however, at all times Lessor shall be entitled to maintain in their possession a "master" key for the leased premises.

17.   Inspection.   Lessor, or their designated agent, may inspect the property at any reasonable time upon advance notice to Lessee.

18.   Default.   In the event of any default of Lessee under the terms hereof, in the event said default continues for a period of ten (10) days following Lessor's written notice to Lessee, Lessor shall be entitled to terminate this Lease Agreement in their sole discretion, and remove any tenants from the premises with or without process of law following thirty (30) days' written notice to said tenants.

19.   Notice.   Notices from Lessor to Lessee shall be sufficient if posted in the United States mails, postage prepaid, addressed to WYOMING TECHNICAL INSTITUTE, 4373 North 3rd, Laramie, Wyoming 82072, c/o Director of

Operations, any such notice shall take effect at the time of the mailing thereof. Notices from Lessor to Lessee shall also be sufficient if hand delivered to Lessee in any manner.  Notices from Lessee to Lessor shall be sufficient if posted in the United States mails, postage prepaid, addressed to Curt N. Blake and Chad D. Blake at 101 McConnell, Laramie, Wyoming 82072, and any such notice shall take effect at the time of mailing thereof.

20.   **Binding.**  This Lease Agreement, its terms and conditions shall be binding upon and shall insure to the benefit of the respective parties hereto, their heirs, successors, and personal representatives.

21.   **Controlling Law.**  This Lease Agreement shall be construed in accordance with the laws of the State of Wyoming.

22.   **Attorney's Fees.**  In the event of any default hereunder, the non-defaulting party shall be entitled to recover from the defaulting party all costs and reasonable attorney's fees incurred as a consequence of said default.

23.   **Quiet Enjoyment.**  The Lessor covenants and agrees with the Lessee that upon the Lessee's paying the rent, and performing all the covenants and conditions aforesaid on the Lessee's part to be observed and performed, the Lessee shall and may peaceably and quietly have, hold and enjoy the premises for the term aforesaid without hindrance or molestation by Lessor, subject, however, to the terms of this Lease Agreement or other instrument hereinbefore mentioned.

IN WITNESS WHEREOF, the parties hereto have signed their names to this Lease Agreement the day and year first above written.

LESSOR:

_____
Chad D. Blake

_____
Curt N. Blake

LESSEE:

_____
MJB Acquisition Corp., D/B/A Wyoming Technical Institute

By: _____
Title: _____

## LEASE AGREEMENT

THIS AGREEMENT made and entered into effective this 7th day of _February_, 2000, by and between ROBERT D. BLAKE and RUTH I. BLAKE husband and wife, hereinafter referred to as "LESSOR", and MJB ACQUISITION CORP., a corporation authorized to do business in Wyoming, d/b/a WYOMING TECHNICAL INSTITUTE, hereinafter referred to as "LESSEE";

### WITNESSETH:

1.   <u>Premises Leased</u>.  Lessor does hereby lease and permit Lessee to enter upon, use and occupy for the purposes and on the conditions hereinafter set forth, the following described property situated in the City of Laramie, County of Albany, State of Wyoming, described as follows:

> Lot 2, Block 1, First Filing of Revised Montevue Addition to the City of Laramie.

2.   <u>Term</u>.  Unless sooner terminated as hereinafter provided, this Lease Agreement shall remain in full force and effect for a period beginning July 1, 2000, and ending June 30, 2005, together with options to renew as set forth herein.

3.   <u>Rental</u>.  Lessee agrees to pay to Lessor, as rent for the use of the leased premises, the sum of Four Thousand Six Hundred Eighty and No/100 Dollars ($4,680.00) per month.  A payment of Four Thousand Six Hundred Eighty and No/100 Dollars ($4,680.00) shall be paid on July 1, 2000, and a like payment shall be made on the first day of each consecutive month thereafter for the term of this Lease Agreement.  In addition to the payments described above, the parties hereto agree to use the existing account that was set up for the Lease Agreement dated May 11, 1992.  Said account shall constitute payments in advance of Lessee's responsibility to replace and/or repair floor coverings and appliances as required in Paragraph 7 hereof.  Upon any renewal, termination or expiration of this Lease Agreement, and written notice thereof from

Lessee at the expiration of this Lease Agreement, less any charges for damages to the leased premises or appliances therein or fixtures thereto; and less any reasonable charge for cleaning and restoring the leased premises to the same condition as it was on May 11, 1992.

In the event Lessee fails to make any payment as set forth herein, within ten (10) days of its due date, then Lessee shall be in default of this Lease Agreement, in which case Lessor may either elect to specifically enforce this Lease Agreement, or Lessor may evict Lessee and re-enter with or without process of law and in any manner resume possession of the leased premises subject to the provisions of Paragraph 17 hereof. Lessor shall have a lien right on any and all of Lessee's personal property located on the leased premises.

If any payment of rent is not made as provided herein within ten (10) days after the date due, Lessee shall pay a late fee in the amount of five percent (5%) of such late payment of rent. In the event any payment of rent continues to remain unpaid for thirty (30) days after said payment is due, Lessee shall pay interest on the unpaid rent at a rate of eighteen percent (18%) per annum from the first day such payment is due until such rent is paid. All payments made by Lessee shall be applied first to interest and penalties then to rent and then to annual payments due in advance.

4.    Utilities. Lessee, during occupancy of the leased premises, shall pay one hundred percent (100%) of all charges accruing for gas, electricity, telephone, cable television and city services (including water, sewer, dump, snow removal, refuse and mosquito fees).

5.    Parking Lot. Lessor shall be responsible for the upkeep, maintenance and repair, sealing and crack-fill of the leased premises' parking area. Excepting the specific responsibilities agreed to herein by Lessor, Lessee shall maintain in a clean condition and be responsible for and shall promptly repair any damage to the leased premises'

walks and parking lot areas of the leased premises in accordance with applicable city ordinances.

7.    <u>Premises; Furnishings, Etc.</u>  During the term of this Lease Agreement and any extensions or renewals hereof, Lessee will be responsible for the ordinary and customary maintenance of the leased premises, including but not limited to cleaning, repair or replacement of all furnishings, draperies, screens, light bulbs and any and all glass breakage.  Floor coverings and all appliances will be replaced at the expiration of this Lease Agreement, or any extensions or renewals hereof, paid for from the account set up at First National Bank, with Lessor and Lessee sharing equally the costs of replacement.  The floor coverings will be one grade above the then FHA minimum standard flooring.  The appliances in each rental unit will include: 1 - 40 gallon electric hot water heater; 1 - stackable washer and dryer; 1 - 24" electric range; and 1 - 24" refrigerator.  Lessee agrees to pay for all repairs to appliances during this Lease Agreement and any extension or renewal hereof.  In the event an appliance is damaged beyond repair by a tenant, guest or invitee, Lessee shall be responsible for the full replacement cost of said appliance.  Lessee shall agree to and does hereby accept the condition of the leased premises and all furnishings, appliances and fixtures thereon in the same condition at the termination of this Lease Agreement, subject to the terms hereof.

8.    <u>Assignment.</u>  This Lease Agreement hereby given may not be assigned or transferred either in whole or in part, by Lessee without the written consent of Lessor, which consent shall not be unreasonably withheld or delayed.  Consent will be given if assignee or transferee is as financially responsible as Lessee, or is otherwise financially responsible.  Lessee agrees that in all written sub-leases with tenants of the leased premises, said tenants shall be denied the ability to store, maintain or use any barbecue or hibachi of any type on any portion of the leased premises at any time.

parking lot, major plumbing not caused by the negligence of the tenants, guests or invitees.

10.    Use.  Lessee shall not suffer or permit the leased premises to be used for any unlawful purpose or in an improper manner contrary to law or ordinance, nor permit any liens to be filed against the leased premises.  Lessee will hold Lessor harmless from any liability whatsoever, including cost and reasonable attorney's fees arising out of Lessee's leasing and subleasing of the leased premises.

11.    Disturbing Noises.  Lessee and Lessee's tenants shall not make or permit to be made any disturbing noises, or do or permit any act which will unreasonably interfere with the rights, comforts or conveniences of neighboring property owners.

12.    Option to Renew.  Lessor hereby grants to Lessee the option to renew this Lease Agreement for two (2) consecutive five (5) year terms after the expiration of the original term of this Lease Agreement; PROVIDED, HOWEVER, that the terms of any such renewals of this Lease Agreement including but not limited to any adjustment in the rental to paid hereunder, shall meet with the mutual approval of both of the parties to this Lease Agreement.  In the event Lessee elects to exercise the options described herein, written notice thereof must be provided to Lessor no later than March 31, 2005 and March 31, 2010, respectively.

13.    Insurance and Property Tax.  Lessor shall, at their expense, maintain liability insurance and comprehensive hazard insurance on the leased premises and pay real property taxes and assessments on the leased premises.  Lessor shall bear no responsibility whatsoever for loss or damage to personal property located within or about the leased premises, or for personal injury or death of any tenant, guest or invitee thereof, and Lessee agrees to indemnify and hold Lessor harmless from any and all liability under such circumstances, including but not limited to costs and reasonable attorney's fees.

There shall be no structural changes made to the leased premises by Lessee.

15.     Keys.  Lessee from time to time, in its discretion and at its cost shall be permitted to change the locks on the individual units in the leased premises, provided, however, at all times Lessor shall be entitled to maintain in their possession a "master" key for the leased premises.

16.     Inspection.  Lessor, or their designated agent, may inspect the leased premises at any reasonable time upon advance notice to Lessee.

17.     Default.  In the event of any default of Lessee under the terms hereof, in the event said default continues for a period of ten (10) days following Lessor's written notice to Lessee, Lessor shall be entitled to terminate this Lease Agreement in their sole discretion, and remove any tenants from the premises with or without process of law following thirty (30) days' written notice to said tenants.  In the event of such a default and termination, Lessor shall be entitled to retain as liquidated damages, the full amount of any deposits paid by Lessee in accordance with the terms hereof.

18.     Notice.  Notices from Lessor to Lessee shall be sufficient if posted in the United States mails, postage prepaid, addressed to WYOMING TECHNICAL INSTITUTE, 4373 North 3rd, Laramie, Wyoming 82072, c/o Director of Operations, any such notice shall take effect at the time of the mailing thereof.  Notices from Lessor to Lessee shall also be sufficient if hand delivered to Lessee in any manner.  Notices from Lessee to Lessor shall be sufficient if posted in the United States mails, postage prepaid, addressed to Lessor at 101 McConnell, Laramie, Wyoming 82072, and any such notice shall take effect at the time of mailing thereof.

19.     Binding.  This Lease Agreement, its terms and conditions shall be binding upon and shall insure to the benefit of the respective parties hereto, their heirs, successors, and personal representatives.

20.     Controlling Law.  This Lease Agreement shall be construed in accordance

reasonable attorney's fees incurred as a consequence of said default.

22.   Quiet Enjoyment.   Lessor covenants and agrees with Lessee that upon Lessee's paying the rent, and performing all the covenants and conditions aforesaid on Lessee's part to be observed and performed, Lessee shall and may peaceably and quietly have, hold and enjoy the leased premises for the term aforesaid without hindrance or molestation by Lessor, subject, however, to the terms of this Lease Agreement or other instrument hereinbefore mentioned.

IN WITNESS WHEREOF, the parties hereto have signed their names to this Lease Agreement the day and year first above written.

LESSOR:

Robert D. Blake

Ruth I. Blake

LESSEE:

MJB Acquisition Corp., D/B/A Wyoming
Technical Institute

By: Jim D. Mathis, President
Title:

ATTEST:

Shirley A. Meyer

**EXHIBIT B**

 CT Corporation

**Service of Process Transmittal**
02/04/2019
CT Log Number 534856078

**EXHIBIT B**

TO:     Madison Team
        CTProComply (Recipient Account Only)
        8020 Excelsior Dr Ste 200
        Madison, WI 53717-1998

RE:     **Process Served in Wyoming**

FOR:    Zenith Education Group, Inc (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | SMCG, LLC, ETC., PLTF. vs. ZENITH EDUCATION GROUP, INC., ETC. AND ECMG GROUP, INC., ETC., DFTS. |
| **DOCUMENT(S) SERVED:** | SUMMONS, PRECIPE, COMPLAINT, EXHIBIT(S) |
| **COURT/AGENCY:** | ALBANY COUNTY - SECOND JUDICIAL DISTRICT COURT, WY
Case # 34764 |
| **NATURE OF ACTION:** | BREACH OF CONTRACT |
| **ON WHOM PROCESS WAS SERVED:** | CTProComply Company, Cheyenne, WY |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 02/04/2019 at 12:10 |
| **JURISDICTION SERVED :** | Wyoming |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days after service of this Summons upon you, exclusive of the date of service |
| **ATTORNEY(S) / SENDER(S):** | Henry F. Bailey
BAILEY I STOCK I HARMON I COTTAM I LOPEZ LLP
221 East 21st Street
P.O. Box 1557
Cheyenne, WY 82003
307-638-7745 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 02/05/2019, Expected Purge Date: 02/10/2019

Image SOP

Email Notification,  Madison Team  ctsop@ctprocomply.com |
| **SIGNED:** | CTProComply Company |
| **ADDRESS:** | 1908 Thomes Ave
Cheyenne, WY 82001-3527 |
| **TELEPHONE:** | 314-863-5545 |

Page 1 of  1 / RA

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

**EXHIBIT C**

Douglas B. Tumminello, #7-5653
Lewis Roca Rothgerber Christie LLP
1200 17th Street, Suite 3000
Denver, CO 80202
Phone: (303) 623-9000
E-mail: dtumminello@lrrc.com

IN THE DISTRICT COURT FOR THE SECOND JUDICIAL DISTRICT

STATE OF WYOMING, COUNTY OF ALBANY

| | | |
|---|---|---|
| SMCG, LLC, A Wyoming Limited Liability Co., | ) ) ) | |
| Plaintiff, | ) ) ) | Docket No. 34764 |
| vs. | ) ) | |
| ZENITH EDUCATION GROUP, INC., A Delaware nonprofit corporation, and ECMG GROUP, INC., a Delaware nonprofit corporation, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## NOTICE OF FILING OF NOTICE OF REMOVAL

**TO THE HONORABLE JUDGES OF THE DISTRICT COURT,**

NOTICE IS HEREBY GIVEN that on the 19th day of February, 2019, Defendants

Zenith Education Group, Inc., and ECMC Group, Inc. ("Defendants"), filed a Notice of

Removal of this action in the United States District Court for the District of Wyoming. *See*

**Exhibit 1.** In accordance with 28 U.S.C. § 1446(d), this Court shall proceed no further unless

and until the case is remanded.

107304350.1

Respectfully submitted this 19th day of February, 2019.

LEWIS ROCA ROTHGERBER CHRISTIE LLP

Douglas B. Tumminello, #7-5653
1200 17th Street, Suite 3000
Denver, CO 80202
Phone:  (303) 623-9000
E-mail:  dtumminello@lrrc.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of February 2019, a true and correct copy of the foregoing **NOTICE OF FILING OF NOTICE OF REMOVAL** was served electronically by email and by U.S. mail to:

Henry F. Bailey Jr., Esq.
Douglas W. Bailey, Esq.
Bailey Stock Harmon Cottam Lopez LLP
221 East 21st Street
P.O. Box 1557
Cheyenne, WY 82003
307-638-7745
*Attorneys for Plaintiff*

Douglas B. Tumminello, #7-5653
LEWIS ROCA ROTHGERBER CHRISTIE LLP
1200 17th Street, Suite 3000
Denver, CO 80202
Phone:  (303) 623-9000
E-mail:  dtumminello@lrrc.com

2

**EXHIBIT D**

**From:** Doug Bailey [mailto:doug@performance-law.com]
**Sent:** Wednesday, August 29, 2018 8:23 AM
**To:** Eness, Natalie
**Subject:** RE: Blake/Zenith; Downey Street Apartments

Natalie,

Unfortunately, Curt made an error in his spreadsheet that affected the Grand Total Estimate. Apparently, exterior costs were not being added to the total. I've attached a corrected version of the DETAILED REPAIR COSTS FOR ZENITH. The Grand Total is $555,465.15.

Let me know how you'd like to proceed.

Doug

Office (307) 638-7745
Fax (307) 638-7749
**www.performance-law.com**

**CONFIDENTIALITY NOTICE**

This e-mail transmission, and any documents, files or previous e-mail messages attached to it may contain information that is confidential or legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that you must not read this transmission and that any disclosure, copying, printing, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify the sender by telephone or return e-mail and delete the original transmission and its attachments without reading or saving in any manner. Thank you.

**From:** Doug Bailey
**Sent:** Tuesday, August 28, 2018 1:37 PM
**To:** Eness, Natalie <neness@ecmc.org>
**Subject:** Blake/Zenith; Downey Street Apartments

Natalie,

Attached, please find a repair cost estimate from my client, with the total being $349,969.29 for the 36 units.

Please note the following:

1. This amount applies only if Zenith makes no repairs and Curt has to do the work himself or sub-contract it out.

2.  Curt is willing to listen to any counter-proposals you have and is open to lower estimates if Zenith goes out and obtains its own estimates and finds less expensive sub-contractors or materials.

3.  Curt will not agree to split the cost of the washers, dryers, and garbage disposals in 709. The 709 Lease states, "In the event an appliance is damaged beyond repair by a tenant, guest or invitee, Lessee shall be responsible for the full replacement cost of said appliance." Curt has a handwritten note dated March 25, 1993 that says all of the washers and dryers were removed because they were "trashed." In other words, they were damaged beyond repair and need to be replaced by the Lessee. The same is true for the garbage disposals in 709.

4.  Curt will agree to split the cost of new stoves, refrigerators, and range hoods at 709 in accordance with the 709 Lease, but believes Zenith is fully responsible for appliances in 715 and 721 because of the language requiring it to return the units in a similar to new condition, less normal wear and tear.

5.  Throughout the history of these Leases, there were never any damage deposits collected because it was understood by all parties that the units would be returned in like-new condition at the end of the lease. The understanding was that the units would undergo a full refurbishing at the end of the lease.

6.  The lost income Curt has included in the attached sheet only accounts for the month of September. He will be seeking lost income for each month the units are unable to be rented out due to their condition, calculated using an 80% occupancy rate.

7.  Attorney fees are also included in the attached sheet as allowed in the Leases.

Again, Curt stresses that he's willing to negotiate, but the longer this carries on, the more money he loses. Also, he's spending considerable time and money on this when Zenith should have had the apartments in like-new condition at the expiration of the term.

Please let me know what your client wants to do. If we do not receive a reasonable offer to settle by next Wednesday, Curt will file suit.

Doug

Office (307) 638-7745
Fax (307) 638-7749
**www.performance-law.com**

**CONFIDENTIALITY NOTICE**

This e-mail transmission, and any documents, files or previous e-mail messages attached to it may contain information that is confidential or legally privileged.  If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that you must not read this transmission and that any disclosure, copying, printing, distribution or use of any of the information contained in or attached to this

transmission is STRICTLY PROHIBITED.  If you have received this transmission in error, please immediately notify the sender by telephone or return e-mail and delete the original transmission and its attachments without reading or saving in any manner.  Thank you.

| SMCG LLC | | | | | | | |
|---|---|---|---|---|---|---|---|
| ZENITH EDUCATION | | OVERHEAD | $58,945.09 | | | | |
| 709, 715,721 Downey Street | | CONSTRUCTION MANAGEMENT FEE | $71,618.29 | | | | |
| Laramie, Wy | | TOTAL BID | $867,377.04 | | | | |
| PHONE: | | | | | | | |

| ESTIMATE NUMBER | 0018-96 | |
|---|---|---|
| BUILDING REMODEL | 709, 715, & 721 DOWNEY ST. (36 UNITS TOTAL) | |

| ACCT. # | DESCRIPTION | MEMO'S | Cost | Overhead 8.00% | Profit 9.00% | Total Bid | Per Bldg |
|---|---|---|---|---|---|---|---|
| 401 | LAND | | $ - | $ - | $ - | $ - | $ - |
| 403 | PLANS & ENG | | | $ - | $ - | $ - | $ - |
| 405 | BUILDING PERMIT | | $ - | $ - | $ - | $ - | $ - |
| 407 | CONST. INSURANCE | | $ 2,753.00 | $ 220.24 | $ 267.59 | $3,240.83 | $ 1,080.28 |
| 409 | EXCAVATION | | $ - | $ - | $ - | $ - | $ - |
| 411 | UTILITY DITCHES | | | $ - | $ - | $ - | $ - |
| 413 | FINISH GRADING | | | $ - | $ - | $ - | $ - |
| 415 | FOOTING LABOR | | | $ - | $ - | $ - | $ - |
| 417 | FOUNDATION LABOR | | | $ - | $ - | $ - | $ - |
| 419 | INTERIOR FLATWORK LABOR | | | $ - | $ - | $ - | $ - |
| 421 | INTERIOR FLATWORK MAT. | | | $ - | $ - | $ - | $ - |
| 423 | EXTERIOR FLATWORK LABOR | | | $ - | $ - | $ - | $ - |
| 425 | EXTERIOR FLATWORK MAT. | | | $ - | $ - | $ - | $ - |
| 427 | FOOTING CONC. & MAT. | | | $ - | $ - | $ - | $ - |
| 429 | FOUNDATION CONC. & MAT. | | | $ - | $ - | $ - | $ - |
| 431 | GYP FLOORING UNDERLAYMENT | | | $ - | $ - | $ - | $ - |
| 433 | SIDEWALK & FLAT CONC | Repairs to Damaged Concrete | $ 5,697.00 | $ 455.76 | $ 553.75 | $ 6,706.51 | $ 2,235.50 |
| 435 | PARKING LOTS | Crack Fill and Seal Allotment | $ 13,975.00 | $ 1,118.00 | $ 1,358.37 | $ 16,451.37 | $ 5,483.79 |
| 437 | ALLEY | Repairs to Damage Done to alley Pavemtn | $ 11,019.00 | $ 881.52 | $ 1,071.05 | $ 12,971.57 | $ 4,323.86 |
| 439 | TRUSSES | | $ - | $ - | $ - | $ - | $ - |
| 441 | FRAMING MATERIAL | | $ - | $ - | $ - | $ - | $ - |
| 443 | EQUIPMENT RENTAL | Lifts, forklifts, pressure wash, etc | $ 4,500.00 | $ 360.00 | $ 437.40 | $ 5,297.40 | $ 1,765.80 |
| 445 | SIDING | | $ - | $ - | $ - | $ - | $ - |
| 447 | SHEETROCK | Repairs to Sheetrock before Painting | $ 8,697.00 | $ 695.76 | $ 845.35 | $ 10,238.11 | $ 3,412.70 |
| 449 | INSUL. BATTS | | $ - | $ - | $ - | $ - | $ - |
| 451 | INSUL. BLOWN | | $ - | $ - | $ - | $ - | $ - |
| 453 | TRIM PACKAGE | | $ 32,766.13 | $ 2,621.29 | $ 3,184.87 | $ 38,572.28 | $ 12,857.43 |
| 455 | NAILS | | $ - | $ - | $ - | $ - | $ - |
| 457 | WINDOWS - SCREENS | | $ 10,363.68 | $ 829.09 | $ 1,007.35 | $ 12,200.12 | $ 4,066.71 |
| 459 | EXTERIOR DOORS | | $ 21,107.52 | $ 1,688.60 | $ 2,051.65 | $ 24,847.77 | $ 8,282.59 |
| 461 | DRAPES/BLINDS MAT. | | $ 9,267.00 | $ 741.36 | $ 900.75 | $ 10,909.11 | $ 3,636.37 |
| 463 | DRAPES/BLINDS LABOR | | $ 1,600.00 | $ 128.00 | $ 155.52 | $ 1,883.52 | $ 627.84 |
| 465 | FRAMING LABOR | | $ - | $ - | $ - | $ - | $ - |
| 467 | ENTRANCES | Cleaning and Repair | $ 3,639.00 | $ 291.12 | $ 353.71 | $ 4,283.83 | $ 1,427.94 |
| 469 | SIDING LABOR | | $ - | $ - | $ - | $ - | $ - |
| 471 | TRIM LABOR | | $ 60,300.00 | $ 4,824.00 | $ 5,861.16 | $ 70,985.16 | $ 23,661.72 |
| 473 | PLANT INVESTMENT FEE | | $ - | $ - | $ - | $ - | $ - |
| 475 | INSUL. LABOR | | $ - | $ - | $ - | $ - | $ - |
| 477 | MISC. LABOR | | $ - | $ - | $ - | $ - | $ - |
| 479 | WATER METER FEE | | $ - | $ - | $ - | $ - | $ - |
| 481 | PAINT HANDRAIL | | $ 3,698.00 | $ 295.84 | $ 359.45 | $ 4,353.29 | $ 1,451.10 |

| Item | Description | Notes | | | | | |
|---|---|---|---|---|---|---|---|
| 483 | | | $ - | $ - | | $ - | $ - |
| 485 | DOORS FOR WTR MTR/STORAGE | | $ - | $ - | $ - | $ - | $ - |
| 487 | WINDOW WELL COVERS | | $ - | $ - | $ - | $ - | $ - |
| 489 | PLUMBING | Remove and Replace Fixture & Water Heaters | $ 119,088.00 | $ 9,527.04 | $ 11,575.35 | $ 140,190.39 | $ 46,730.13 |
| 489a | PLUMBING FIXTURES | Included in 489 | | $ - | $ - | $ - | $ - |
| 491 | CABINETS | Remove and Replace | $ 101,296.00 | $ 8,103.68 | $ 9,845.97 | $ 119,245.65 | $ 39,748.55 |
| 493 | TOPS | Included in 491 | | $ - | $ - | $ - | $ - |
| 495 | ELECTRICAL | Water Htr. Switch Plates and Outlets | $ 5,465.00 | $ 437.20 | $ 531.20 | $ 6,433.40 | $ 2,144.47 |
| 497 | ELECTRICAL SERVICE | | | $ - | $ - | $ - | $ - |
| 499 | EXTERIOR LIGHTING | Allowance | $ 3,500.00 | $ 280.00 | $ 340.20 | $ 4,120.20 | $ 1,373.40 |
| 501 | STAIRWAY LIGHTING | Allowance | $ 2,000.00 | $ 160.00 | $ 194.40 | $ 2,354.40 | $ 784.80 |
| 503 | GUTTER | Repair Damage Allowance | $ 5,500.00 | $ 440.00 | $ 534.60 | $ 6,474.60 | $ 2,158.20 |
| 505 | MISC. SHEET METAL | | | $ - | $ - | $ - | $ - |
| 507 | HANG SHEETROCK | | | $ - | $ - | $ - | $ - |
| 509 | TAPE & TEXTURE | | | $ - | $ - | $ - | $ - |
| 511 | PAINT INSIDE | | $ 32,940.00 | $ 2,635.20 | $ 3,201.77 | $ 38,776.97 | $ 12,925.66 |
| 513 | PARKING LOT PAINTING | Allowance | $ 3,500.00 | $ 280.00 | $ 340.20 | $ 4,120.20 | $ 1,373.40 |
| 515 | FLOOR COVERING | | $ 115,532.00 | $ 9,242.56 | $ 11,229.71 | $ 136,004.27 | $ 45,334.76 |
| 517 | FLOOR COVERING LABOR | | | $ - | $ - | $ - | $ - |
| 519 | LINOLEUM LABOR | | | $ - | $ - | $ - | $ - |
| 521 | LINOLEUM MATERIALS | | | $ - | $ - | $ - | $ - |
| 523 | SHOWER DOORS | | | $ - | $ - | $ - | $ - |
| 525 | MIRRORS/MEDICENE CABINETS | REMOVE AND REPLACE | $ 4,894.92 | $ 391.59 | $ 475.79 | $ 5,762.30 | $ 1,920.77 |
| 527 | APPLIANCES | | $ 75,915.41 | $ 6,073.23 | $ 7,378.98 | $ 89,367.62 | $ 29,789.21 |
| 529 | FINAL CLEAN-UP | 36 UNITS @ $400 | $ 14,400.00 | $ 1,152.00 | $ 1,399.68 | $ 16,951.68 | $ 5,650.56 |
| 531 | CONST. INTEREST | | $ 32,600.00 | $ 2,608.00 | $ 3,168.72 | $ 38,376.72 | $ 12,792.24 |
| 533 | FIRE EXT | ALLOWANCE | $ 3,500.00 | $ 280.00 | $ 340.20 | $ 4,120.20 | $ 1,373.40 |
| 535 | TRASH REMOVAL | ALLOWANCE | $ 6,500.00 | $ 520.00 | $ 631.80 | $ 7,651.80 | $ 2,550.60 |
| 537 | DEMOLITION EST | | $ 8,300.00 | $ 664.00 | $ 806.76 | $ 9,770.76 | $ 3,256.92 |
| 539 | CONTINGENCY COSTS | ALLOWANCE | $ 12,500.00 | $ 1,000.00 | $ 1,215.00 | $ 14,715.00 | $ 4,905.00 |
| 541 | LOAN POINTS | | | $ - | $ - | $ - | $ - |
| 543 | SANDSTONE | | | $ - | $ - | $ - | $ - |
| 545 | | | | $ - | $ - | $ - | $ - |
| 547 | | | | $ - | $ - | $ - | $ - |
| 549 | Washer & Dryer 709 Downey | Removed and not replaced by WYOTECH | $ 17,436.12 | $ 1,394.89 | $ 1,694.79 | $ 20,525.80 | $ 6,841.93 |
| | TOTAL COST | | $ 736,813.66 | $ 58,945.09 | $ 71,618.29 | $ 867,377.04 | $ 289,125.68 |

| SUMMARY | ZENITH | SMCG |
|---|---|---|
| REPAIR 715 DOWNEY STREET 1/3 Total | $ 289,125.68 | |
| REPAIR 721 DOWNEY STREET 1/3 Total | $ 289,125.68 | |
| REPAIR 709 DOWNEY STREET 1/3 Total Less 1/2 of Appliances and Flooring | $ 251,563.70 | |
| 1/2 Of Bid for Appliances and Flooring 709 Downey | | $37,561.98 |
| REPLACE WASHERS AND DRYERS | $ 17,436.12 | |
| **Amount Each Party is Responsible For** | $ 847,251.17 | $37,561.98 |